UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

SIGNATURE HEALTH                                Case No. 12-40748-JKO
SERVICES, INC,
                                                Chapter 7

      Debtor.
_____/

KENNETH WELT, as Chapter 7 Trustee
For the bankruptcy estate of SIGNATURE
HEALTH SERVICES, INC.,                          ADV. NO.:

      Plaintiff,

v.

STEVE LEYKIND,
PREMIER MOBILE HEALTH SOLUTIONS, INC,
MOBILE MEDICAL MANAGEMENT, LLC,
and
DALE GIBSON

      Defendants.
_____/

## COMPLAINT

Kenneth Welt, as Trustee of the Chapter 7 Bankruptcy Estate of Signature Health Services, Inc. (the "Trustee") files this complaint against Steve Leykind ("Leykind"), Mobile Medical Management, LLC, Premier Mobile Health Solutions, Inc., and Dale Gibson ("Gibson"), as follows:

1.    Signature Health Services, Inc. (the "Debtor"), is a debtor under the provisions of Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"), having filed a voluntary petition thereunder on October 11, 2012 (the "Petition Date").

2. The Trustee is the duly appointed and authorized trustee of the Debtor's Chapter 7 bankruptcy estate.

3. Steve Leykind is an individual residing in Miami-Dade County, Florida.

4. Dale Gibson is an individual residing in Broward County, Florida

5. Mobile Medical Management, LLC is a Florida Limited Liability Company located in Broward County, Florida.

6. Premier Mobile Health Solutions, Inc., is a Florida Corporation located in Broward County, Florida.

7. This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§157(b) and 1334(b). This is a core proceeding as under 28 U.S.C. §157(b)(2)(B), (F), (H) and (O).

8. Venue is proper in this Court pursuant to 28 U.S.C. §1409(a).

## ALLEGATIONS COMMON TO ALL COUNTS

9. At the time of filing of its Chapter 7 case, the Debtor was a corporation organized and existing under the laws of the State of Florida, principally engaged as a health care management services organization (an "MSO").

10. The Debtor primarily operated under its fictitious name, Sunshine Visiting Physicians.

11. The Debtor primarily provided health care services to Medicare and Medicaid beneficiaries at assisted living facilities (ALFs), through physicians and other health care practitioners who were independent contractors of the Debtor.

12. The Debtor provided services on-site at the facilities rather than providing services in its office.

13. At all times prior to the Petition Date, Gibson was the Debtor's Principal.

14. Prior to February, 2012, Leykind was engaged as an officer of Gramic Labs, a diagnostic laboratory with which the Debtor regularly conducted business. The Debtor was Gramic Labs's largest customer.

15. On June 29, 2011, First Coast Service Options, Inc., the Medicare Administrative Contractor (MAC) for the State of Florida (the "MAC") assessed a fine of $1.7 Million for overbilling Medicare.

16. As a result of the fine, the Debtor experienced financial difficulties, and on both a balance sheet and operating statement basis, the Debtor was insolvent. This placed a significant strain on the Debtor's ability to maintain adequate cash flow, including making payroll.

17. Leykind and Gibson are both Managers of Mobile Medical Management, LLC ("Mobile Medical"), a Florida Limited Liability Company located at 250 S. Federal Hwy, Dania Beach, FL 33004-4005.

18. Leykind is the Registered Agent and Director of Premier Mobile Health Solutions, Inc ("Premier Mobile"), a Florida Corporation located at 250 S. Federal Hwy, Dania Beach, FL 33004-4005.

19. In or about February 2012, the Debtor and Leykind agreed that Leykind would invest approximately $180,000.00 in the Debtor. In return, the Debtor, through Gibson, agreed that Leykind would be brought in as an "Administrator" or "Partner," and would assist in turning the company around.

20. On information and belief, the Debtor characterized the $180,000.00 as a loan.

21. Some time in June of 2012, the Debtor transferred substantially all of its assets, including its fictitious name, Sunshine Visiting Physicians, and its phone number, to Leykind (the "Transfer").

22. The Debtor received no consideration for the Transfer other than the forgiveness of its "debt" to Leykind under the supposed loan.

23. On information and belief, the Debtor also shared its customer lists with Leykind.

24. As of January 31, 2013, the Debtor's former phone number forwarded to Premier Mobile Health Solutions, Inc ("Premier Mobile"), an MSO for which Leykind is the Registered Agent and Director.

25. In the time following the Transfer, entities associated with Steve Leykind, including, but not necessarily limited to Premier Mobile and Mobile Medical (the "Leykind Entities") provided substantially the same services as the Debtor, to substantially the same clients, at substantially the same facilities.

## COUNT I
**(Fraudulent Transfer -11 U.S.C. § 548 - as to Leykind and Premier Mobile)**

26. The averments of paragraphs 1 through 25, inclusive, are incorporated herein and made a part hereof by this specific reference.

27. This is an action against Leykind and Premier Mobile to recover the value of monies, assets or property fraudulently transferred to it pursuant to Sections 548 and 550 of the Bankruptcy Code.

28. On information and belief, some of the property may have been transferred or licensed to Premier Mobile.

29. As set forth above, Leykind and Premier Mobile have been the recipient of the transfer of an interest of the Debtor in property, including, without limitation, the personal and intangible property described in the Bill of Sale, which is attached hereto as Exhibit A.

30. Pursuant to the Bill of Sale, the Debtor and Leykind valued the property at $185,470.00.

31. The Debtor made such transfer(s) at the direction and control of Leykind, and the transfers were made with actual intent to hinder, delay or defraud the Debtor's creditors that existed at the time of such transfer and which thereafter arose.

32. Leykind and Premier Mobile are liable to the estate for the value of the property transferred, in an amount not less than $185,470.00, or such higher amount as is proven at trial.

WHEREFORE the Trustee requests this Court enter judgment against Leykind and Premier Mobile, in an amount not less than $185,470.00, or such higher amount as is proven at trial.

## COUNT II
### (Fraudulent Transfer -11 U.S.C. §548 - as to Leykind and Premier Mobile)

33. The averments of paragraphs 1 through 25, inclusive, are incorporated herein and made a part hereof by this specific reference.

34. This is an action against Leykind and Premier Mobile to recover the value of monies, assets or property fraudulently transferred to it pursuant to Sections 548 and 550 of the Bankruptcy Code.

35. On information and belief, some of the property may have been subsequently transferred or licensed to Premier Mobile.

36. As set forth above, Leykind and Premier Mobile have been the recipient of the transfer of an interest of the Debtor in property, including, without limitation, the personal and intangible property described in the Bill of Sale, which is attached hereto as Exhibit A.

37. The Debtor received less than a reasonably equivalent value in exchange for such transfer(s) and

   (a) was either insolvent on the date that such transfers were made or became insolvent as a result thereof;

(b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which all property remaining with the Debtor provided an unreasonably small capital; and/or

(c) intended to incur, or believed that Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

38. Leykind and Premier Mobile are liable to the estate for the value of the property transferred in an amount not less than $185,470.00, or such higher amount as is proven at trial.

WHEREFORE the Trustee requests this Court enter judgment against Leykind and Premier Mobile, in an amount not less than $185,470.00, or such higher amount as is proven at trial.

## COUNT III
**(preference 11 U.S.C. §547 - as to Leykind)**

39. The averments of paragraphs 1 through 25, inclusive, are incorporated herein and made a part hereof by this specific reference.

40. This is an action against Leykind to recover the value of certain preferential transfers pursuant to Sections 547 and 550 of the Bankruptcy Code.

41. As set forth above, Leykind was the recipient of an interest of the Debtor in property, including, without limitation, the amounts set forth in the Bill of Sale.

42. Leykind claims that such transfers were made for or on account of an antecedent debt owed by the Debtor to Leykind before such transfer(s) were made.

43. Such transfers were made while the Debtor was insolvent.

44. At all times pertinent, Leykind was an affiliate of the Debtor, in control of the Debtor, or was otherwise an insider of the Debtor.

45. The transfer(s) were made on or before one year prior to the Petition Date.

46. The transfer(s) enabled Leykind to receive more than he would receive if the transfer(s) had not been made and Leykind had received payment of such alleged debt to the extent provided by the provisions of the Bankruptcy Code.

47. Leykind is liable to the estate for an amount not less than $185,470.00, or such higher amount as is proven at trial.

WHEREFORE the Trustee requests this Court enter judgment against Leykind, in an amount not less than $185,470.00, or such higher amount as is proven at trial.

## COUNT IV
### (De Facto Merger - Leykind)

48. The averments of paragraphs 1 through 25, inclusive, are incorporated herein and made a part hereof by this specific reference.

49. This is an action against Leykind to recover an amount sufficient to pay the indebtedness of the estate as a de facto merger pursuant to Section 544 of the Bankruptcy Code and applicable state law.

50. On information and belief, the business affairs of the Debtor were absorbed into Leykind's entities, or the Debtor and Leykind planned to achieve the same, including, but not limited to, all management, personnel, and assets as such existed prior to the Petition Date, and were controlled and directed by Leykind, other agents and representatives.

51. Although the technical formalities of a merger of the entities were not completed, all actions and indicia of merger were undertaken by Leykind and the Debtor, such that, for all practical purposes, a de facto merger occurred.

52. Under applicable non-bankruptcy law, a de facto merger occurred for which Leykind would be liable to a judgment creditor under applicable Florida law.

53. Pursuant to Section 544 of the Bankruptcy Code, the Trustee succeeded to all rights and powers of a judgment creditor under applicable non-bankruptcy law.

54. Leykind is liable to the estate in an amount sufficient to pay the indebtedness of the estate therefore.

WHEREFORE the Trustee requests this Court enter judgment against Leykind, in an amount not less than $1,982,830.47, or such higher amount as is proven at trial.

## COUNT V
### (Partnership or Joint Venture as to Leykind)

55. The averments of paragraphs 1 through 25 are incorporated herein and made a part hereof by this specific reference.

56. This is an action against Leykind to recover any amount sufficient to pay the indebtedness of the estate pursuant to Section 723 of the Bankruptcy Code and applicable Florida law.

57. Some time prior to the petition date, Leykind and the Debtor operated the business affairs of the Debtor as a general partnership or joint venture, the partners of which were the Debtor and Leykind. On information and belief, there was an agreement to manage the business, to share in the profits, and to share in the losses.

58. Under applicable state law, and Section 723 of the Bankruptcy Code, all general partners are liable for all debts of the partnership or joint venture.

59. Leykind is liable to the estate for the amount sufficient to pay the outstanding indebtedness of the estate.

WHEREFORE the Trustee requests this Court enter judgment against Leykind, in an amount not less than $1,982,830.47, or such higher amount as is proven at trial.

## COUNT VI
### (Breach of Fiduciary Duty – as to Leykind)

60. The averments of paragraphs 1 through 25, inclusive, are incorporated herein and made a part hereof by this specific reference.

61. This is an action against Leykind to recover for breach of fiduciary duties.

62. By January 2012, the Debtor was either insolvent (on a balance sheet and/or operating basis), or its financial affairs had become sufficiently uncertain and precarious that it had entered the zone of insolvency.

63. Between January 2012 and the Petition Date, a portion of the management, control and direction of the Debtor's affairs was under the control of Leykind.

64. As the de facto officer, director and controlling managing agent of the Debtor's ongoing business and financial affairs, and given that the Debtor was then insolvent or had entered the zone of insolvency, Leykind owed fiduciary duties of loyalty, good faith and fair dealing to both the Debtor and its creditors.

65. As set forth above, Leykind breached those fiduciary duties by engaging in a series of actions designed to reap for himself or the entities in which he held a interest, all of the Debtor's ongoing contracts and good will, while avoiding payment of the Debtor's debts, including that which he had caused to be incurred, and to do so all at the cost, loss and expense of the Debtor and its creditors.

66. Leykind is liable to the estate therefore in an amount sufficient to pay the estate's indebtedness.

WHEREFORE the Trustee requests this Court enter judgment against Leykind, in an amount not less than $1,982,830.47, or such higher amount as is proven at trial.

## COUNT VII
**(Breach of Fiduciary Duty – as to Gibson)**

67. The averments of paragraphs 1 through 25, inclusive, are incorporated herein and made a part hereof by this specific reference.

68. This is an action against Gibson to recover for breach of fiduciary duties.

69. By January 2012, the Debtor was either insolvent (on a balance sheet and/or operating basis), or its financial affairs had become sufficiently uncertain and precarious that it had entered the zone of insolvency.

70. At all times, Dale Gibson was the Principal and Director of the Debtor..

71. Gibson owed duties of loyalty, good faith and fair dealing to both the Debtor and its creditors.

72. As set forth above, Gibson breached those fiduciary duties by engaging in a series of actions designed to reap for himself and Leykind or the entities in which they held a interest, all of the Debtor's ongoing contracts and good will, while avoiding payment of the Debtor's debts, including that which he had caused to be incurred, and to do so all at the cost, loss and expense of the Debtor and its creditors.

73. Gibson is liable to the estate therefore in an amount sufficient to pay the estate's indebtedness.

WHEREFORE the Trustee requests this Court enter judgment against Gibson, in an amount not less than $1,982,830.47, or such higher amount as is proven at trial.

## COUNT VIII
**(Deepening Insolvency - as to Leykind and Gibson)**

74. The. averments of paragraphs 1 through 25, and paragraphs 60 through 73, inclusive, are incorporated herein and made a part hereof, by this specific reference.

75. This is an action to recover from Leykind and Gibson an amount sufficient to pay the indebtedness of the estate on a theory of deepening insolvency.

76. Between January 2012 and the Petition Date, Leykind and Gibson utilized their dominion and control over the Debtor's business and financial affairs to transfer Debtor assets, including without limitation, the amounts set forth in the Bill of Sale; and generally conducted the Debtor's business operations at an ever growing loss, while simultaneously extracting benefits for themselves, until such could no longer, on any basis, be done: at which point they abandoned the Debtor's business and financial affairs.

77. All such acts are gross breaches of duties owed by Leykind and Gibson to the Debtor and its creditors, and the Debtor's operations during the period prior to the Petition Date substantially worsened the Debtor's already precarious financial position, and ultimately resulted in the Debtor's Chapter 7 filing.

78. Leykind and Gibson are liable to the estate for the deepening insolvency to the Debtor, in an amount to be proved at trial.

WHEREFORE the Trustee requests this Court enter judgment against Leykind and Gibson, in an amount not less than $1,982,830.47, or such higher amount as is proven at trial.

**COUNT IX**
**(Conversion / Unjust Enrichment as to Leykind, Mobile Medical and Premier Mobile)**

79. Trustee realleges and reincorporates all of the allegations set forth in paragraphs 1 through 25 above.

80. On information and belief, Leykind, Mobile Medical and Premier Mobile (the "Leykind Defendants") have downloaded and removed customer lists and other customer information without compensation to the estate, Upon information and belief, additional assets have been appropriated by the Leykind Defendants without compensation to the estate.

81. The Leykind Defendants have effectively established an "alter ego" of the Debtor by raiding and pilfering assets of the estate, and to this end, have contacted and continue to contact and do business with the Debtor's clients and customers. These assets could have been sold by the Trustee for the benefit of all creditors.

82. The actions of the Leykind Defendants have caused confusion and has destroyed the value of these assets for the benefit of the estate.

WHEREFORE, the Trustee respectfully requests that this Court enter an Order: awarding the Trustee, on behalf of the Debtor's estate, damages sufficient to compensate the estate for the value of the assets converted by Leykind, Mobile Medical and Premier Mobile, and for such amounts as these Defendants have been unjustly enriched thereby and granting such other and further relief as may be just and proper.

## COUNT XI
### (Recharacterization of Debt to Equity – As to Leykind)

83. Trustee realleges and reincorporates all of the allegations set forth in paragraphs 1 through 25.

84. This is an action to recharacterize Leykind's alleged loans from a debt interest in the Debtor to an equity interest.

85. The totality of the circumstances surrounding the purported loans made by Leykind to the Debtor, and the economic realties of such loans, together reflect the existence of an equity interest in the Debtor, not an interest based on a traditional arm's length debtor-creditor relationship.

WHEREFORE, the Trustee respectfully requests that this Court enter an order recharacterizing all loans made by Leykind to the Debtor from debt interests to equity interests / capital contributions and granting such other and further relief as may be just and proper.

Respectfully submitted,

**MARSHALL GRANT, P.L.**
Attorneys for the Trustee
197 South Federal Highway, Suite 300
Boca Raton, Florida  33432
Telephone No. 561.672.7580
Facsimile No. 561.672.7581
Email:  jgrant@marshallgrant.com

By:   /s/ Joe M. Grant
       JOE M. GRANT
       Florida Bar No. 137758